I must respectfully dissent from the opinion of the majority. "The right of a natural parent to the care and custody of [her] child is one of the most precious and fundamental in law."[1] Taking this into consideration, courts have held that R.C. 3107.07 must be strictly construed in favor of the natural parent's rights.[2]
Appellant sent monthly correspondences to her daughter since August of 1999. This clearly indicates that appellant is a loving parent, wishing to be a part of her
child's life. At the time of the hearing in November of 2001, appellant had less than two years remaining on her prison sentence. Her child was still very young at the time of these proceedings. Therefore, it is very possible for appellant to have a worthwhile and rewarding parental relationship with her daughter after her release from prison. The trial court abused its discretion by classifying the money appellant received from her mother, and occasionally her friends, as "discretionary income." These monies were gifts, plain and simple. Gross income does not include gifts for income tax purposes.[3] Gifts are not specifically mentioned under the definition of gross income for the purpose of child support calculations.[4] It appears the most appropriate classification of gifts would be "[n]onrecurring or unsustainable income or cash flow items," which is not included as gross income for the purposes of child support calculations.[5] The trial court should not have considered this money.
In regard to the small amount of money appellant earned while in prison, I would follow In re adoption of McMillion, where the Second Appellate District held that there was substantial and probative evidence to support the trial court's findings.[6] In McMillion, the appellee was incarcerated in federal prison and earned anywhere from a few dollars a month to fifty dollars a month from his prison labor. Appellee spent his earnings on his own toiletries and food snacks. The trial court found that there was a justifiable cause for appellee's failure to support his son.[7]
The majority focuses on the fact that appellant spent the additional funds on "non-essential" items such as arts and crafts, and donuts. A review of appellant's account shows that she spent a total of $6.00 on donuts, and $8.80 on arts and crafts. There is nothing else in the account summary to contradict appellant's sworn statement that the money she received, both as income and as gifts, was spent on her personal necessities.
There was no evidence presented to show that appellant had total and unlimited access to the money in her prison accounts. No one from the prison testified regarding the policies and regulations governing prison accounts. Attorney Daugherty argued at trial that these prison accounts were similar to saving accounts. However, there was no evidentiary support for this argument. No evidence was presented that appellant could simply ask to "withdraw" $50.00 and would be given a crisp bill from the prison "bank." There is a legitimate possibility that these prison accounts were heavily restricted and the funds could have only been spent on certain items at certain "stores" within the prison. Without an evidentiary basis, it should not be assumed that appellant had unfettered access to this money.
I would reverse the judgment of the trial court, as there was not clear and convincing evidence presented that appellant had failed to support her child for one year without justifiable cause. Appellant did have justifiable cause. She was in prison and had a minimal income of about $20 per month.
[1] In re Adoption of Sartain (March 22, 2002), Lake App. No. 2001-L-197, unreported, 2002 Ohio App. LEXIS 1344, at *12, citing In reMasa (1986), 23 Ohio St.3d 163, 165, and Santosky v. Kramer (1982),445 U.S. 745, 753.
[2] Id. at *12, citing Masa, 23 Ohio St.3d at 23.
[3] 26 U.S.C.S. 102(A).
[4] R.C. 3119.01(C)(7).
[5] See R.C. 3119.01(C)(7)(e) and R.C. 3119.01(C)(8).
[6] In re Adoption of McMillion (Dec. 31, 1991), Miami App. No. 91-CA-14, unreported, 1991 Ohio App. LEXIS 6492.
[7] Id.